**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

RIVERVIEW HEALTH INSTITUTE, : 
LLC, *et al.*,
:
    Plaintiffs,                  Case No. 3:12cv00428
:
vs.
                                          District Judge Walter Herbert Rice
:    Chief Magistrate Judge Sharon L. Ovington
NORTH AMERICAN LASER     :
SPINE INSTITUTE, LLC, *et al.*,
:
    Defendants.

**REPORT AND RECOMMENDATIONS[1]**

## I.   Introduction

Defendants removed this case from state court in late December 2012 based on diversity jurisdiction. At that time, the parties were unaware that complete diversity jurisdiction was lacking because one Defendant was an Ohio citizen. Once Defendants realized this problem, they filed a Motion to Remand the case to state court. The Court granted the Motion as unopposed. (Doc. #26). Later, the Court granted Plaintiffs' Motion for Attorney Fees and Costs for Wrongful Removal.

The case is presently pending to determine the amount of reasonable attorney fees and costs Defendants must remit to Plaintiffs. *Id.* The parties have submitted the following:

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff's Itemized Statement of Attorney Fees (Doc. #33), Defendants' Objections (Doc. #34), and Plaintiffs' Reply (Doc. #36).

**II.     Discussion**

    **A.     Plaintiffs' Itemized Statement And Other Supporting Documentation**

Plaintiffs' Itemized Statement of Attorney Fees describes attorney work in eighteen entries. Their Statement states the month and year the work was performed, the attorney who performed the work, the amount of time spent (number of hours, if any, and six-minute intervals), and the amount of attorney fees incurred in each entry. The total amount of attorney-work hours was 43.58; the total amount of fees equals $8,706.00. (Doc. #s 33, 36). Plaintiffs also seek an additional $820.00 for work related to their Reply. Plaintiffs therefore seek a total of $9,526.00 in attorney fees.

Defendants contend that Plaintiffs' Itemized Statement is insufficient because it is not supported with some form of contemporaneous billing records as mandated in *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008). (Doc. #34, PageID at 282). Defendants further contend that Plaintiffs have added narrative to their Itemized List thus detracting from its evidentiary value. They conclude, "because the Fee Request on its own has no probative value, the Fee Request should be reduced accordingly." (Doc. #34, PageID at 282).

Under *Imwalle*, documentation offered in support of a motion for attorney fees must contain both sufficient detail and probative value to "enable the court to determine with a

high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553 (citation omitted). Inadequate documentation may warrant a reduction in the sought-after award. *Id*. For instance, reduction may be appropriate "where the attorney did not maintain contemporaneous records of his time or the nature of his work..., and where billing records 'lumped' together time entries under one total so that it was impossible to determine the amount of time spent on each task." *Id.* (internal punctuation omitted) (quoting, in part, *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F.Supp. 1017, 1021 (N.D. Ohio 1997)) (other citation omitted). Yet, billing records may suffice when, for example, "the entries made by counsel 'were sufficient even if the description for each entry was not explicitly detailed,' ... and where the attorney provided the court with computerized calendars and file information indicating the dates and times of work performed." *Id*. at 553 (citations omitted). Individual descriptions of the work performed may be read "in the context of the billing statement as a whole and in conjunction with the timeline of the litigation," to resolve whether or not work was "actually and reasonably expended in the prosecution of the litigation." *Imwalle,* 515 F.3d at 554 (citation omitted).

     In response to Defendants' challenge to the sufficiency of Plaintiffs' Itemized Statement, Plaintiffs submit the declaration of attorney Adam R. Webber. He explains that their "[i]temized lists of the efforts, hours, and expense... were drawn specifically from time and billing records kept contemporaneously with the time expenditures...." (Doc. #36,

PageID at 309-10, ¶s 4-5). Attorney Webber further states, "Each attorney's time was specifically re-reviewed and approved by that attorney before filing of the Supplemental Memorandum (Doc. 33) and Reply (Doc. 34)." *Id*. at ¶5. Because attorney Webber's declaration is executed and submitted in the form required by 28 U.S.C. §1746, and given the absence of evidence indicating that it contains any false or factually incorrect information, the declaration and Plaintiffs' Itemized Statement constitute evidence of high probative value regarding the actual work Plaintiffs' attorneys performed. In addition, Plaintiffs' Itemized Statement describes the work performed by counsel with sufficient detail to identify the work counsel actually performed. Although Plaintiffs' counsel has not provided contemporaneous billing records, this omission was reasonable in this case as a cost-minimizing measure. Attorney Webber states, "Copies of the actual client bills were not provided because I and others at my firm work on a number of other litigation matters for this client, and the redaction of over 18 months' worth of bills would have substantially increased the expenditure of time on this matter." *Id*. at ¶ 6.

Accordingly, Defendants' objections to the sufficiency of Plaintiffs' documentation lack merit.

**B.**     **Defendants' Remaining Contentions**

Defendants do not object to the fees Plaintiffs seek in connection with the "review of the notice of removal; Fed. R. Civ. P. 26(f) report; reviewing the Court's notation order correcting its scheduling order; and preparing the corporate disclosure statements." (Doc.

#34, PageID at 283). Yet, Defendants object to a number of the requested fees, specifically, Entries 3, 6, and 8-18.

Before addressing these Entries, it is helpful to recall the Court's prior attorney-fee holding:

> In sum, Plaintiffs are entitled to recover under §1447(c) the fees and costs they incurred as a result of – were caused by – Defendants' mistaken, and therefore, improper removal of this case from state court. This includes, but is not limited to, expenses incurred in prosecuting a remand motion.

(Doc. #31, PageID at 268 (adopted by Doc. #35), citing *Shooter Const. Co., Inc. v. Wells Fargo Ins. Servs. USA, Inc.*, 3:11-CV-181, 2011 WL 6339680 at *2 (S.D. Ohio Nov. 28, 2011)).

**Entry 3**

In Entry 3, Plaintiffs seek to recover $860 for 4 hours and 18 minutes of work performed by attorney Webber. The work involved receiving and reviewing Defendants' initial disclosures and preparing Plaintiffs' initial disclosures. (Doc. #34, PageID at 283).

Attorney Webber's work, according to Defendants, was not incurred as a result of the removal. Defendants reasoning is threefold: (1) Plaintiffs would almost certainly have sought the information contained in Defendants' initial federal disclosures by way of interrogatories during state-court discovery proceedings; (2) the information disclosed by Defendants remains valuable to Plaintiffs after remand; and (3) Plaintiffs' preparation of their initial disclosures involved collecting and disclosing discoverable information, as they likely would have done in state court.

5

There is no specific mandate under Ohio R. Civ. P. 26 to the initial-disclosure mandate in Fed. R. Civ. P. 26(a). Consequently, Plaintiffs' initial disclosures and review of Defendants' initial disclosures resulted from a mandatory federal requirement triggered by Defendants' removal of the case to this Court. The fact that the information remains valuable to Plaintiffs does not negate the causal effect between Defendants' removal and Plaintiffs' initial disclosures or their counsel's review of Defendants' initial disclosures. In addition, attorney Webber states, "Defendants' paper discovery requests requested substantially all of the same information requested in the Plaintiff[s'] Rule 26(a) initial disclosures, including the names of persons with all relevant documents, and an itemization of damages." (Doc. #36, PageID at 311). At best for Defendants, this means that their removal caused Plaintiffs' counsel to perform some, if not most, of the same work twice: first preparing Plaintiffs' initial disclosures, then responding to Defendants' interrogatories. Given this, Plaintiffs engaged in the same work twice in this Court because of Defendants' removal. Viewed another way, if the case had remained in state court, attorney Webber would have simply responded to Defendants' interrogatories without burdening Plaintiffs with the costs of any work associated with initial disclosures. *See Shooter Const.*, 2011 WL 6339680, at *2 (expenses incurred as a result of removal include "the necessary expenses of being in the second judicial system ...." (internal punctuation and citation omitted)). Additionally, it was reasonable and necessary for Plaintiffs' counsel to review Defendants' initial disclosures in this case even if Defendants' discovery responses contained the same or

6

similar information. In order to satisfy his duty to zealously represent his clients, attorney Webber would have been remiss not to review Defendants' initial disclosures in this case to learn what further discovery would be needed from Defendants.

Accordingly, Entry 3 identifies attorney work incurred as a result of removal. As such, Entry 3 work is compensable under §1447(c).

**Entry 6**

For 3.9 hours of attorney work, Entry 6 states: "Research [Fed. R. Civ. P.] 45 for Format, Jurisdictional, and Service Requirements for Federal Subpoenas after December 2013 Revisions; Prepare Federal Subpoenas to Witnesses with Instructions, Witness Fees, Service Requirements, Deposition and Production Location, etc." (Doc. #34, PageID at 285).

Defendants object that counsel's failure to separately itemize the multiple tasks in Entry 6 prevents the Court from determining with a high degree of certainty that a reasonable amount of time was spent upon each task.

Entry 6 does not suffer from insufficient itemization. Given the relatively short – 3.9 hours – of attorney work performed plus the number of tasks performed, there is no need for counsel to further specify the number of hours performed on each particular task in order. Entry 6, as is, sufficiently identifies work actually and reasonably performed as a result of the removal in this case. *Imwalle*, 515 F.3d at 553. Additionally, the potential significance of even one improperly served subpoena – loss of a necessary party or witness – plus the fact

7

that two new subsections – Rule 45(c) and (f) – went into effect in December 2013, support the conclusion that 3.9 hours of attorney work researching Rule 45 together with the other tasks set forth in Entry 6 was reasonable and caused by the removal.  This is so even though some pertinent information (subpoena forms and related information), as Defendants point out, is readily available online.  The ease with which such information can be gathered does not obviate the work necessary to ensure compliance with the amended version of Rule 45, which became effective in December 2013.  As a result, it was not excessive or unreasonable for counsel to spend time performing the work described in Entry 6.

Defendants also point out that Entry 6 fails to identify the individuals to whom the subpoenas were needed.  It is conceivable that this argument might well have merit in a case involving more than the 3.9 hours of attorney work performed on subpoenas in this case.  In the former situation, it might be necessary to know who was subpoenaed to determine if the attorney work was incurred as a result of removal; in the latter and present situation, the relatively low number of attorney-work hours does not raise the concern that the subpoenas were unnecessary or not incurred as a result of the removal.

Accordingly, Defendants' objections to Entry 6 lack merit.

**Entries 8 through 18**

Defendants acknowledge, "Entries 8 though 14 reflect work done in connection with Defendants' Motion to Remand." (Doc. #34, PageID at 288).  At first blush, this acknowledgment would seem to dispel opposition to the fees described in Entries 8 through

14 because the Court previously held that Plaintiffs are entitled to recover "expenses incurred in prosecuting a remand motion." (Doc. #31, PageID at 268 (adopted by Doc. #35)). Defendants, however, object to these Entries on several grounds, beginning with the factual accuracy of certain Entries.

Defendants point out that the Entries for attorney Webber's February and March 2014 work "disingenuously characterize the work as 'Requests for Additional Diversity Information' (Entry 13) and 'Read and Respond to Defendants' Supplemental Discovery Responses on Jurisdictional Issue' (Entry 14)." (Doc. #34, PageID at 288). Defendants contend that attorney Webber's email establishes something contrary – that the information Plaintiffs "sought during the remand was not caused by the jurisdictional issue, but was requested in the course of regular discovery." *Id*. (citing, "Ex. A to Declaration of Darren W. Ford (Ex. 1), Email String Among Counsel, Email from Adam Webber to Kara Czanik, Jan. 29, 2014.").

Defendants' contentions stretch attorney Webber's email to attorney Czanik too far in the direction of regular discovery. The email's subject was the "Diversity Jurisdiction Issue." *Id*., PageID at 299. It therefore broadly concerned the issue upon which remand turned out to be warranted, rather than a discovery issue alone. The text of the email likewise explained, "we have not been provided with information we need to properly evaluate this question of citizenship." *Id.* Consequently, although attorney Webber asked for supplemental information responsive to Plaintiffs' Interrogatories 16 and 17 and

9

Document Requests 18 and 19, the text of his email establishes that he did so in connection with the jurisdictional/remand issue Defendants' counsel needed to evaluate.  In addition, although attorney Webber acknowledged that the information sought "is relevant to the other claims and defenses ...," he continued "and complete responses are now obviously necessary to evaluate the Court's jurisdiction."  *Id*., PageID at 300.  Thus, considering all the information in the email, attorney Webber's descriptions in Entries 13 and 14 are factually consistent with his email.  And, when read together, these Entries and attorney Webber's email are sufficient to show that the work he performed and the fees generated were incurred as a result of the removal.

      Defendants next contend that time spent by Plaintiffs' counsel research of removal law after Defendants filed their Motion to Remand and strategizing about the Motion was not reasonable because Defendants had reasonably attempted to obviate the need for such work.  This contention, however, does not fully appreciate the obvious need for Plaintiffs' counsel to explain to Plaintiffs why a remand issue had arisen and why the jurisdictional problem might require a return to state court.  Plaintiffs also faced the reasonable possibility that Smith's declaration, which indicated his Ohio residency, driver's license, and voter registration, might not have sufficed to establish that he was domiciled and, thus, a citizen of Ohio.  *See* Doc. #21, Exh. 1; *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another."); *cf. Persinger v. Extendicare Health*

*Servs., Inc.*, 539 F. Supp. 2d 995, 997, 2008 WL 399637 (S.D. Ohio 2008) (Sargus, D.J.) (identifying a "variety of factors" pertinent to a determination of domicile; no single factor is dispositive). Under these circumstances, Plaintiffs' counsel reasonably spent time researching removal law and strategizing about the remand, and Plaintiffs incurred fees generated by this work as a result of the wrongful removal.

The last category of attorney fees Plaintiffs seek, through Entries 15 through 18 (April, May, June 2014), and Defendants' last contentions relate to Plaintiffs' efforts to recover fees and costs for the wrongful removal under 28 U.S.C. §1447(c). Defendants point out that these Entries total $2,105 in fees to recover $6,601 or, in percentage terms, almost 25% of the total fee request. Defendants point out, "the fee petition tail should not be allowed to wag the dog." (Doc. #34, PageID at 293) (quoting *Career Agents Network, Inc. v. carreeragentsnetwork.biz*, 772 F.Supp.2d 814, 825 (E.D. Mich. 2010) (other citation omitted)). Accepting the wisdom of this canine adage does not assist Defendants because the dog wagging they identify – that Plaintiffs seek fees for run-of-the-mill discovery and similarly unrecoverable fees – lacks merit for the above reasons.

Accordingly, Defendants' Objections to Entries 8 through 18 lack merit.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiffs' Itemized Statement of Attorney Fees (Doc. #33) be accepted;

2. Defendants be ordered to pay Plaintiffs' attorney fees in the amount of $9,526.00; and

      3.        The case be terminated on the Court's docket.

January 8, 2015

                                            s/Sharon L. Ovington
                                              Sharon L. Ovington
                                Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).